_____

EDWARD SULLIVAN, HEATHER SULLIVAN, )
DOE CHILD 1, DOE CHILD 2, DOE CHILD 3 and )
DOE CHILD 4, )
     Plaintiffs, )
  )
vs. )
  )
TOWN OF WALPOLE, MA, WALPOLE POLICE )
DEPARTMENT, CHIEF JOHN F. CARMICHAEL, JR., )
OFFICER ANDREW KIEWLICZ, DET. MICHAEL )
BENNER, DET. SGT. RICHARD KELLEHER, )
OFFICER THOMAS HART, DET. KYLE GRIFFIN, )
OFFICER MATTHEW CROWN, AND OTHER NAMES )
UNKNOWN TO THE PLAINTIFFS AT THIS TIME, )
WALPOLE SCHOOL DEPARTMENT, VICE )
PRINCIPAL LEE TOBEY, AND OTHERS AS YET )
UNKNOWN TO THE PLAINTIFFS, )
     Defendants. )

_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
## FOR JUDGMENT ON THE PLEADINGS UNDER RULE 12(c)

     This is an action in which the plaintiff, Edward S. Sullivan, his wife and four minor children, seek to recover against the defendant, the Town of Walpole, as well as against various police and school officials, for harm the plaintiffs allegedly sustained as a result of an investigation conducted by the Department of Children and Families ("DCF") into Mr. Sullivan's suspected physical abuse of his fifteen-year old daughter, SS. When SS attended Walpole High School ("WHS") on October 24, 2018 with bruises on both cheeks, she admitted to a friend at lunch that the bruises were inflicted by her father, Edward S. Sullivan. WHS Vice Principal, Lee Tobey (as a mandated reporter), promptly reported the suspected abuse to the DCF. M.G.L. c. 119, § 51A. Treating the report as an "emergency report," the DCF, in turn, instructed the Walpole Police Department ("WPD") and Walpole School officials to temporarily detain SS and the other minor

plaintiffs, TS, CS and BS, until it could determine that the health and safety of the children was not in immediate danger. M.G.L. c. 119, § 51B(c). Each child was subsequently detained for approximately three to four hours while the DCF conducted its investigation. That afternoon, the WPD arrested Mr. Sullivan on a charge of domestic assault and battery,[1] a charge later dropped by the Norfolk County District Attorney's Office. On October 31, 2018, the DCF closed its investigation with a finding that the allegation of physical abuse of SS by her father was "unsupported." This litigation ensued.

Plaintiffs' Complaint sounds in four Counts. Each Count is brought by all six plaintiffs against all eleven known[2] defendants:

| | |
|---|---|
| **Count I** | 42 U.S.C. § 1983 – unreasonable seizures and denials of due process in violation of the Fourth, Fifth and Fourteenth Amendments; |
| **Count II** | 42 U.S.C. § 1983 – conspiracy to conduct unreasonable seizures, and to deny due process and equal protection in violation of the Fourth, Fifth and Fourteenth Amendments; |
| **Count III** | M.G.L. c. 12, §§ 11H & 11I – denials of equal protection in violation of the Massachusetts Civil Rights Act ("MCRA"); and |
| **Count IV** | Intentional infliction of emotional distress. |

The claims set forth in plaintiffs' Complaint are subject to dismissal on the grounds set forth below. Therefore, the defendants, the Town of Walpole; the WPD; Police Chief John J. Carmichael, Jr.; Police Officer Andrew Kiewlicz; Detective Michael Benner; Detective Sgt. Richard Kelleher; SRO Thomas Hart; Detective Kyle Griffin; Police Officer Matthew Crown; the Walpole School Department; and WHS Vice Principal Lee Tobey (the "defendants"), hereby move that this Court enter judgment on the pleadings in their favor under Fed. R. Civ. P. 12(c). This

---

[1] "[A]rrest shall be the preferred response whenever an officer … has probable cause to believe that a person …" has committed domestic abuse. M.G.L. 209A, § 1.

[2] The plaintiffs also name as defendants "others as yet unknown."

Memorandum of Law is submitted in support of defendants' Motion for Judgment on the Pleadings.

## I.  ALLEGED FACTS

In the fall of 2018, plaintiffs' four minor children, SS, TS, CS and BS, all attended Walpole public schools.  (Complaint, ¶ 18).  During SS's lunch period at WHS, another student questioned her "as to how she sustained a bruise on her cheek."  (Id., ¶ 19).  Later, the other student "report[ed] to school officials that [SS] had been assaulted by her father, Edward Sullivan."  (Id., ¶ 20).  After questioning SS about her injury (SS denied her father assaulted her), WHS Vice Principal Lee Tobey filed a report of suspected abuse with DCF pursuant to M.G.L. c. 119, § 51A.  (Id., ¶¶ 21 – 23).  That afternoon, SS was questioned at WHS "by the DCF investigator in the presence of [two WPD] police officers."  (Id., ¶¶ 25 & 26).  During this same time period, CS and BS were temporarily detained by school officials at Fisher Elementary School and TS was temporarily detained at the home of a friend until the DCF investigator could speak with them as well.  (Id., ¶ 27).  At approximately 4:00 p.m., Walpole Police arrested Mr. Sullivan on a charge of domestic assault and battery.  M.G.L. c. 265, § 13A.  (Id., ¶ 28).  SS was released to the custody of her grandmother at approximately 6:00 p.m.  (Id., ¶ 26).  DCF subsequently closed its investigation with a finding that the allegation of physical abuse of SS by her father was "unsupported."  (Id., ¶ 29).  One month later, the Norfolk County District Attorney's Office dropped the charge of domestic assault and battery against Mr. Sullivan by filing a notice of nolle prosequi.  (Id.)

## II.  STANDARD OF REVIEW

The standard for evaluating a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is essentially the same as that for deciding a motion to dismiss for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6).  Pasdon v. City of Peabody, 417 F.3d 225,

226 (1st Cir. 2005). To survive a Rule 12(b)(6) motion, a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). *See* TalentBurst, Inc. v. Collabera, Inc., 567 F. Supp. 2d 261, 269 (D. Mass. 2008). Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3rd ed. 2004)); Arivella v. Lucent Technologies, Inc., 2009 WL 1635737, *4 (D. Mass. 2009). More precisely, to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Twombly, at 556-557. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (court must determine whether facts alleged "plausibly narrate a claim for relief").

In 2007, the Supreme Court restated the well-known standard that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Two years later, the Supreme Court clarified Twombly by stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id., 556 U.S. at 679. See Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013).

## III. ARGUMENT

A. **Plaintiff, Heather Sullivan, Fails to Allege a Violation of her Personal Rights and, Therefore, her Claims Should be Dismissed.**

The plaintiff, Heather Sullivan, is identified in the Complaint as the wife of Edward Sullivan and mother of the four minor plaintiffs. (Complaint, ¶ 18). Ms. Sullivan, however, cannot recover under either 42 U.S.C. § 1983 or the MCRA based solely on that status. Ms. Sullivan makes no allegations whatsoever that she was *personally* detained, arrested or even questioned by WPD officers. Therefore, Ms. Sullivan states no constitutional claims in her own right. And, even if the events of October 24, 2018 were upsetting and disruptive to both her and her family, the "distress" Ms. Sullivan allegedly suffered as wife and mother does not make her a viable plaintiff in her own right. To be clear, Ms. Sullivan is not asserting claims for loss of spousal or parental consortium. Because Heather Sullivan alleges no violation of *her* own rights, her personal claims against the defendants should be dismissed.

**B.**     **Defendants, WPD and Walpole School Department, are not Separate Legal Entities and, Therefore, Plaintiffs' Claims Against Them Should be Dismissed.**

The defendants, the WPD and the Walpole School Department, are departments and subordinate entities of the defendant, Town of Walpole. They are not separate legal entities with a capacity to sue and be sued absent specific statutory authority. See Henschel v. Worcester Police Dep't, Worcester, Mass., 445 F.2d 624, 624 (1st Cir. 1971) (action against police department is same as action against municipality); Stratton v. City of Boston, 731 F. Supp. 42, 46 (D. Mass. 1989) (Boston Police Department held not an independent legal entity from City of Boston). Therefore, plaintiffs' claims as against the WPD and the Walpole School Department should be dismissed.

**C.**     **Defendants, Walpole Police Personnel and Vice Principal Lee Tobey, are Sued in Their Official Capacity Only and, Therefore, Plaintiffs' Claims Against Them in Their Individual Capacity (if any) Should be Dismissed.**

In their Complaint, the plaintiffs identity seven individual Walpole defendants: Chief Carmichael; Officer Kiewlicz; Detective Benner; Detective Sgt. Kelleher; SRO Hart; Detective

Griffin; Officer Crown; and Vice Principal Tobey. Yet, plaintiffs do not allege that these individuals are sued in their individual capacity. Rather, each individual is described as a "public official" and/or "public employee" (Complaint, ¶ 7), who was allegedly "acting in his [or her] official capacity" on behalf of the defendant, Town of Walpole, at the time of the events pled in the Complaint. (Id., ¶¶ 9 – 15 & 17). The omission of an "individual capacity" allegation is, admittedly, not dispositive of the capacity issue. See Powell v. Alexander, 391 F.3d 1, 22 (1st Cir. 2004) (rejecting "per se" approach whereby government official is presumed to be sued solely in his official capacity unless complaint specifically states otherwise). To determine capacity, the First Circuit employs the "course of proceedings" test, under which a Court examines "the substance of the pleadings and the course of proceedings in order to determine whether the suit is for individual or official liability." Id. (quoting Pride v. Does, 997 F.2d 712, 715 (10th Cir. 1993)). Still, the "far better practice [is] for the allegations in the complaint to be specific. A plaintiff who leaves the issue murky in the complaint runs considerable risks under the [course of proceedings] doctrine …." Id., at 22.

Here, after identifying the seven individuals, the plaintiffs repeatedly treat the first six (the WPD defendants) as an undifferentiated class or group. For example, WPD "officers" allegedly confronted SS at WHS and informed her she could not contact her parents (Complaint, ¶ 25), WPD "officers" sat in on the DCF interview of SS (Id., ¶ 26), WPD "officers" went to the home of Brian Greeley to ensure that TS remained there "until told otherwise by the police" (Id., ¶ 27), and WPD "officers" arrested Mr. Sullivan and charged him with domestic assault and battery. (Id., ¶ 28). Because the alleged misconduct of each WPD defendant is nowhere pled – i.e., who did what to whom – the individual WPD defendants are not given fair notice of the alleged misdeeds for which plaintiffs seek to hold them each personally liable. And, even though Vice Principal Tobey is

identified as the Walpole School Department employee who questioned SS about her injury and subsequently filed a 51A report with the DCF (Id., ¶¶ 21 & 23), plaintiffs fault unidentified "School officials" for temporarily detaining CS and BS at a separate school (Id., ¶ 27). The absence of specific factual allegations against Chief Carmichael, Officer Kiewlicz, Detective Benner, Detective Sgt. Kelleher, SRO Hart, Detective Griffin, Officer Crown, and Vice Principal Tobey in plaintiffs' Complaint suggests that the seven individual defendants are sued in their official capacity only. Parrott v. Ashe, 2014 WL 775456, *4 (D. Mass. Feb. 24, 2014). Nothing in plaintiffs' Complaint suggests otherwise. Plaintiffs' claims against the seven individual defendants in their individual capacity (if any) should be dismissed.

**D.     In the Alternative, Defendant, Vice Principal Tobey, is Immune from Liability Under M.G.L. c. 119, § 51A(g) and, Therefore, Plaintiffs' State Law Claims Against her (Counts III & IV) Should be Dismissed.**

After speaking with another student and interviewing SS (thereby observing SS's injury for herself), the defendant, Vice Principal Tobey, contacted DCF and filed a report of suspected abuse or neglect pursuant to M.G.L. c. 119, § 51A. As a mandated reporter, Ms. Tobey was under a statutory obligation to file a report with DCF if she had "reasonable cause to believe" that a child was suffering physical or emotional injury resulting from abuse inflicted upon her "which causes harm or substantial risk of harm to the child's health or welfare ...." M.G.L. c. 119, § 51A(a)(i). In fact, her failure to do so could subject Ms. Tobey to a fine of up to $1,000. M.G.L. c. 119, § 51A(c). In addition to filing with DCF, a mandated reporter may also contact local law enforcement authorities regarding the suspected abuse or neglect. M.G.L. c. 119, § 51A(a). And, most importantly, no mandated reporter "shall be liable in any civil or criminal action for filing a [51A] report ... or for contacting local law enforcement authorities ..., if the report or contact was made in good faith, was not frivolous, and the reporter did not cause the abuse or neglect." M.G.L.

c. 119, § 51A(g); <u>Bertram v. Viglas</u>, 2020 WL 1892187, *10 (D. Mass. April 16, 2020); <u>Elias v. Elias</u>, 2003 WL 5774149, *8 (D. Mass. Oct. 22, 2013). The plaintiffs fail to allege sufficient facts to show that Vice Principal Tobey's 51A report was not made "in good faith" or that it was otherwise "frivolous." Thus, Vice Principal Tobey is entitled to immunity from plaintiffs' state law claims. Counts III and IV of plaintiffs' Complaint should be dismissed as against her.

**E.**     **<u>Plaintiffs Fail to State Claims for the Violation of Their "Family Integrity" Rights and, Therefore, the Due Process Claims in Count I Should be Dismissed.</u>**

The Supreme Court has long recognized that familial relationships between parents and children merit constitutional protection through the substantive Due Process Clause of the Fourteenth Amendment. <u>Lehr v. Robertson</u>, 463 U.S. 248, 256 (1983); <u>Stanley v. Illinois</u>, 405 U.S. 645, 651 (1972). Along these lines, and as a subset of the right to familial integrity, is the parental interest in the care, custody and control of their children. <u>Hatch v. Department for Children, Youth and Their Families</u>, 274 F.3d 12, 20 (1st Cir. 2001). Likewise, children have a corresponding liberty interest in being in the care and custody of their parents. <u>Suboh v. District Attorney's Office of Suffolk Dist.</u>, 298 F.3d 81, 91 (1st Cir. 2002). But as the First Circuit has recognized, the scope of the interest in familial integrity "is far from clear." <u>Connor B. ex rel. Vigurs v. Patrick</u>, 774 F.3d 45, 58 (1st Cir. 2014). "It is clear that the interest is a limited one. In particular, it is balanced against the state's right to investigate allegations of abuse or neglect and take appropriate remedial action." <u>Id.</u> (citations omitted).

Thus, the First Circuit has held that the Constitution allows a case worker to take temporary custody of a child without a hearing if he has "a reasonable suspicion that child abuse has occurred (or alternatively, that a threat of abuse is imminent)." <u>Hatch</u>, at 22. In addition, because government has a compelling interest in the welfare of children, it may investigate the relationship between a parent and child provided constitutionally adequate procedures are followed. At the

bottom line, "[t]he right to family integrity *does not include* a constitutional right to be free from child abuse investigations." Watterson v. Page, 987 F.2d 1, 8 (1st Cir. 1993) (emphasis added). See Kauch v. Department for Children, Youth and Their Families, 321 F.3d 1, 4 (1st Cir. 2003).

Plaintiffs' due process claim is subject to dismissal on three grounds. First, plaintiffs fail to specify the "family integrity" rights with which the Walpole defendants allegedly interfered. Id. See Frazier v. Bailey, 957 F.2d 920, 930 (1st Cir. 1992) (constitutional interest in family relationship must be stated with "particularity"). Second, plaintiffs fail to allege sufficient facts to show that defendants' conduct was so "extreme, egregious, or outrageously offensive" as to "shock the conscience." Absent such a showing, plaintiffs cannot recover for a substantive due process violation. Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dep't of Homeland Sec., 510 F.3d 1, 21-22 (1st Cir. 2007). See Abdisamad v. City of Lewiston, __ F.3d __, 2020 WL 2847183, *3 (1st Cir. June 2, 2020) ("To be cognizable, a substantive due process claim under 42 U.S.C. § 1983 must allege facts 'so extreme and egregious as to shock the contemporary conscience.'" (quoting DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005)). Third, given the amorphous nature of the right to family integrity and the state's compelling interest in the welfare of the minor plaintiffs, the individual defendants (if they are sued in their individual capacity) are entitled to qualified immunity. Frazier, at 931 (father's right to the care, custody, and control of his children "can rarely be considered 'clearly established' ... in the absence of closely corresponding factual and legal precedent.") Plaintiffs' due process claims in Count I should be dismissed.

**F.** **Any Seizures of the Minor Plaintiffs Were not Unreasonable and, Therefore, the Minor Plaintiffs' Fourth Amendment Claims in Count I Should be Dismissed.**

The Fourth Amendment protects the right of the people "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures ...." U.S. Const., amend.

IV. To recover under 42 U.S.C. § 1983 for the deprivation of this right, a plaintiff must prove that the defendant acted under color of state law, and that defendant's conduct deprived him of the right against unreasonable searches and seizures. As the Supreme Court has frequently observed, the purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." Camara v. Municipal Court, 387 U.S. 523, 528 (1967). Thus, while a government search or seizure of one's person or property may be intrusive, it will, at times, be necessary for the common good. The underlying command of the Fourth Amendment is that a search or seizure must be "reasonable," and what is reasonable depends on the context of the search or seizure. A "seizure" of a person occurs when his freedom of movement is terminated or otherwise restricted "by means of physical force or show of authority." Terry v. Ohio, 392 U.S. 1, 19, n.16 (1968). See United States v. Mendenhall, 446 U.S. 544, 554 (1980) ("seizure" occurs if reasonable person under similar circumstances would not have believed he was free to leave). The defendants do not contend (at this stage) that the minor plaintiffs were not "seized" within the meaning of the Fourth Amendment when they were temporarily detained for questioning by the DCF. See Doe v. Heck, 327 F.3d 492, 509 (7th Cir. 2003) (student removed from class for questioning by caseworker and uniformed police officer regarding alleged abuse held seized under Fourth Amendment). However, such "seizures" were not unreasonable and, therefore, the minor plaintiffs cannot recover under the Fourth Amendment.

The minor plaintiffs were not arrested, but rather temporarily detained while DCF conducted its investigation. Therefore, no warrant based on probable cause was required. Importantly, the express purpose of the DCF investigation was to protect the health and safety of the children by ensuring that they were not returned to an abusive environment.[3] The Supreme

---

[3] Upon initiating an "emergency response" (as it did here), the first priority of the DCF "is to view the child(ren) in question, and to determine the condition of any other children residing in the same household." 110 CMR 4.26(1).

Court has not yet articulated the reasonableness standard to be applied to an in-school seizure of a child for questioning during a child abuse investigation.  Although the Circuit Courts appear split on the issue, the First Circuit holds that it is sufficient if authorities had a reasonable suspicion of an imminent threat to the safety of the child in order to detain him or her for questioning.  Wojcik v. Town of North Smithfield, 76 F.3d 1 (1st Cir. 1996).  In Wojcik, local school officials transported a fifth grade student from one school to another so that a DCF investigator could interview her and a sibling together in the same location regarding suspected child abuse.  School officials had neither a warrant issued on probable cause nor parental consent.  Nonetheless, the First Circuit ruled that school officials did not violate the student's Fourth Amendment rights.

> The Fourth Amendment … protects against *unreasonable* seizures. Nothing in the present facts made it unreasonable for the school, acting *in loco parentis*, to move one of the children from one school to another school in the vicinity, so that both children could be questioned together by a state official following upon a possible abuse report made by one of the teachers. The claim fails both on the merits and the qualified immunity grounds.

Id., at 3 (emphasis in original).  While the First Circuit did not articulate the precise reasonableness standard it was applying, it nonetheless cited with approval New Jersey v. T.L.O., 469 U.S. 325 (1985), where the Supreme Court held that, in a school setting, school officials do not need a warrant or probable cause to conduct a student search, provided the search is justified at its inception and the search, as conducted, is "reasonably related in scope to the circumstances which justified the interference in the first place."  Id., at 340-41.  This is, in essence, the "reasonable suspicion" standard.

---

This viewing can occur in the home, unless DCF determines that "the child would be placed at greater risk if interviewed in the home," in which case the social worker and supervisor may decide "that another location is more appropriate."  Id.  Along these lines, M.G.L. c. 119, § 51B, states, in part:

> If [DCF] has reasonable cause to believe a child's health or safety is in immediate danger from abuse or neglect, the department shall take a child into immediate temporary custody if it has reasonable cause to believe that the removal is necessary to protect the child from abuse or neglect.

M.G.L. c. 119, § 51B(c).

The defendants here had a reasonable suspicion of an imminent threat to the safety of the minor plaintiffs; therefore, it was not unreasonable for them to temporarily detain SS, TS, CS and BS for questioning by the DCF investigator. Alternatively, the individual defendants (if they are sued in their individual capacity) are entitled to qualified immunity on the minor plaintiffs' Fourth Amendment claims on the grounds that the applicable standard in such circumstances was not clearly established as of October 24, 2018. In either event, the minor plaintiffs' Fourth Amendment claims should be dismissed.[4]

**G.  Plaintiffs Fail to State Claims Against the Town or Official Capacity Defendants Under the Fourteenth or Fourth Amendments and, Therefore, Count I Should be Dismissed Against the Municipal Defendants.**

Plaintiffs' suit against the seven individual defendants in their "official capacity" is, in all respects but name, the same as a suit against the municipality. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Yet, a municipality cannot be held vicariously liable under Section 1983 for the conduct of one of its officers or employees. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 665 (1978). Nor can it be held liable where its officers or employees inflicted no constitutional harm upon the plaintiff. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). See Hill v. Walsh, 2017 WL 2818987, *5 (D. Mass. June 29, 2017) (Monell claim against City of Taunton dismissed without Fourth Amendment violation to ground it); Robinson v. Cook, 706 F.3d 25, 38 (1st Cir. 2013) ("[P]olicy or practice aside, a municipality cannot be liable for the actions of its officials under Monell if those actions 'inflicted no constitutional harm'") (quoting

---

[4] Even if a warrant was required to temporarily detain the minor plaintiffs (which the defendants deny), that requirement was negated by the "exigent circumstances" exception. Wilmot v. Tracey, 938 F. Supp. 2d 116, 138 (D. Mass. 2013). "Exigent circumstances" exist when authorities reasonably believe that "there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." United States v. Samboy, 433 F.3d 154, 158 (1st Cir. 2005). A subset of the "exigent circumstances" doctrine is the "emergency aid" exception "which allows a warrantless entry based on 'the need to assist persons who are seriously injured or threatened with such injury.'" Hill v. Walsh, 2017 W.L. 2828987, *3 (D. Mass. June 29, 2017) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). "Exigent circumstances" existed under the circumstances pled here.

*Heller*, 475 U.S. at 799). As set forth above, the Walpole officers and employees did not violate the constitutional rights of the minor plaintiffs and, therefore, the minor plaintiffs' claims against the municipal defendants cannot survive.

Local government, may, nevertheless, be held liable under Section 1983 if it deprives a person of a constitutional right through "a policy statement, ordinance, regulation, or decision officially adopted or promulgated." Smith v. City of Boston, 413 Mass. 607, 610 (1992) (*citing* Monell, 436 U.S. at 690). However, out of concern that municipal liability based on fault might collapse into de facto *respondeat superior* liability, the Supreme Court "set a very high bar for assessing municipal liability under Monell." Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005). Therefore, in the absence of formal government action, liability may only be imposed if plaintiff's rights were violated by the existence of a widespread practice that, although not authorized by law or express government policy, was "so permanent and well settled as to constitute a 'custom or usage' with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (*quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)). Moreover, a plaintiff must show "a direct link between the municipality's policy and the constitutional violation." Bowen v. City of Manchester, 966 F.2d 13, 18 (1st Cir. 1992).

The plaintiffs allege no policy, practice, custom or usage on the part of the Town or its officials regarding the interference with "family integrity" rights or the temporary detention of school children during investigations of domestic abuse. Nor do plaintiffs allege any causal link between such a policy and plaintiffs' harm. Therefore, Count I should be dismissed against the municipal defendants.

**H.** **Plaintiffs Fail to Allege Sufficient Facts to Support a Civil Rights Conspiracy Claim and, Therefore, Count II Should be Dismissed.**

A civil rights conspiracy under 42 U.S.C. § 1983 "is a combination of two or more persons acting in concern to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Smith v. City of Holyoke, 2020 WL 1514610, *10 (D. Mass. March 30, 2020) (quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988)); Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008). To be actionable, a plaintiff must also prove that the defendants acting in concert deprived him or her of a right secured by the Constitution or laws of the United States. Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980). Further, to control frivolous conspiracy suits, courts insist that civil rights conspiracies be pled "with specificity." Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977); Gallagher v. Commonwealth of Mass., 2002 WL 924243, *2 (D. Mass. March 11, 2002); Jones v. National Communication and Surveillance Networks, 409 F. Supp. 2d 456, 470 (S.D.N.Y. 2006). Conclusory, vague or general allegations that defendants engaged in a conspiracy to deprive plaintiffs of their constitutional rights are not sufficient to survive a motion to dismiss. Ciambriello v. County of Nassau, 292 F.3d 307, 325 (2d Cir. 2002); Diaz v. Devlin, 229 F. Supp. 3d 101, 111 (D. Mass. 2017) (to survive dismissal, civil rights conspiracy claim must be supported with factual assertions).

Here, plaintiffs allege no facts whatsoever to suggest that defendants acted jointly, in concert with one another, or pursuant to a shared plan, to deprive plaintiffs of their protected rights. Rather, plaintiffs allege only that defendants "conspired" to deprive them of their rights and "acted in furtherance of this conspiracy in violation of 42 U.S.C. § 1983 …." (Complaint, ¶ 38). How defendants did so is left wholly to conjecture. Such conclusory allegations are not enough. Count II should be dismissed.

## I.  **Plaintiffs Fail to Allege Sufficient Facts to Support a MCRA Claim and, Therefore, Count III Should be Dismissed.**

To recover under the MCRA, plaintiffs must show that defendants (1) interfered or attempted to interfere (2) with a right protected under the Constitution or laws of the United States or the Commonwealth of Massachusetts (3) by means of "threats, intimidation or coercion." M.G.L. c. 12, §§ 11H & 11I; Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989).  The Court is no doubt familiar with the statutory terms "threats, intimidation or coercion" and, therefore, defendants will not restate those definitions here.  It is worth noting, however, that plaintiffs make no allegations whatsoever that their exercise or enjoyment of any protected right was ever subjected to interference by means of "threats, intimidation or coercion."  Plaintiffs' Complaint is wholly silent in this regard.  And, even though the Court can envision that minors temporarily detained and questioned by state and local authorities may feel intimidated, no facts are set forth to support such a conclusion.  This omission is particularly fatal where the conduct of each individual defendant is neither pled nor described in any detail whatsoever.  Again, plaintiffs make no effort in their Complaint to allege who did what to whom.  Instead, all individual defendants are treated as one indistinguishable group.  Thus, those WPD defendants uninvolved in the arrest of Mr. Sullivan are left at a loss to understand how they individually interfered or attempted to interfere with his constitutional rights.  WPD defendants uninvolved in the temporary detention of SS, TS, CS and BS for questioning by the DCF are left at a loss to understand how they individually interfered or attempted to interfere with the minors' constitutional rights.  And, Vice Principal Tobey is provided with no facts to understand how she can potentially be held liable under the MCRA to anyone other than SS.  Individual defendants should not be compelled to guess at the conduct by which they are accused of interfering with another's rights through "threats, intimidation or coercion."

In addition, defendants interfered with no constitutional rights of the plaintiffs; thus, any purported "threats, intimidation or coercion" are irrelevant. In Count III, plaintiffs claim that defendants' conduct deprived them "of the equal protections of the law …." (Complaint, ¶ 40). The Equal Protection Clause of the Fourteenth Amendment "prohibits a state from treating similarly situated persons differently because of their classification in a particular group." Mulero–Carrillo v. Roman–Hernandez, 790 F.3d 99, 105–106 (1st Cir. 2015). To survive a motion to dismiss an equal protection claim, "a plaintiff must allege facts plausibly demonstrating that 'compared with others similarly situated, [the plaintiff was] selectively treated ... based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Id., at 106 (quoting Barrington Cove Ltd. Partnership v. Rhode Island Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001)). Plaintiffs identify no comparators whatsoever and make no allegations that they were selectively treated by defendants based on impermissible classifications, or a malicious or bad faith intent to injure them. Plaintiffs' equal protection claim cannot stand. See Schofield v. Clarke, 769 F. Supp. 2d 42, 48 (D. Mass. 2011) (dismissing equal protection claim where the plaintiff "fail[ed] to set forth any facts showing that he was treated differently from others who were similarly situated").

Three additional grounds support the dismissal of Count III. First, even if defendants interfered with plaintiffs' constitutional rights, such interference was achieved by direct action – *i.e.*, temporarily detaining the minor plaintiffs for DCF questioning and arresting Mr. Sullivan – not by threats, intimidation or coercion. A direct violation does not implicate the MCRA. Longval v. Commissioner of Corrections, 404 Mass. 325, 333 (1989). See Columbus v. Biggio, 76 F. Supp. 2d 43, 54 (D. Mass. 1999) ("a direct deprivation of rights, even if unlawful, is not coercive because

it is not an attempt to force someone to do something the person is not lawfully required to do"). Second, a municipality is not a "person" subject to suit under the MCRA.  Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 592 (2001); Kelley v. LaForce, 288 F.3d 1, 11 (1st Cir. 2002). Thus, no MCRA claim can lie against the defendant, Town of Walpole, or against the individual defendants in their official capacity.  Arias v. City of Everett, 2019 WL 6528894, *15 (D. Mass. Dec. 4, 2019).  Third, to the extent the WPD officers and Vice Principal Tobey are sued in their individual capacity (which defendants deny), they are entitled to qualified immunity.  Duarte v. Healy, 405 Mass. 43, 46 (1989).  This defense is available under the MCRA to the same extent it is available under Section 1983.  For the reasons set forth above, Count III should be dismissed as against all defendants.

**J.**       **Plaintiffs Fail to Allege Sufficient Facts to Support a Claim of Intentional Infliction of Emotional Distress and, Therefore, Count IV Should be Dismissed.**

"The standard for making a claim of intentional infliction of emotional distress is very high."  Polay v. McMahon, 468 Mass. 379, 386 (2014) (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996)).  To prevail on such a claim, plaintiffs must show "(1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused plaintiff's distress; and (4) that this distress was severe."  Doe v. D'Agostino, 367 F. Supp. 2d 157, 173 (D. Mass. 2013) (quoting Sena v. Commonwealth, 417 Mass. 250, 263-64 (1994)).  Further, "to be considered extreme and outrageous, the defendant's conduct must be beyond all bounds of decency and . . . utterly intolerable in a civilized community."  Id. (quotations omitted); Vittands v. Sudduth, 49 Mass. App. Ct. 401, 410 (2000).  Courts generally require a claimant to satisfy a high threshold to establish a claim of intentional infliction of emotional distress, "particularly

without an accompanying physical injury." <u>Caputo v. Boston Edison Co.</u>, 924 F.2d 11, 13-14 (1st Cir. 1991).

If the individual defendants are sued in their individual capacity (which they deny), they are admittedly not immune for intentional torts and, thus, can be sued for intentional infliction of emotional distress. <u>Nelson v. Salem State Coll.</u>, 446 Mass. 525, 537 (2006). That does not mean, however, that Count IV should survive defendants' Motion to Dismiss. It should not. Plaintiffs fail to allege sufficient facts to show that defendants' individual conduct was "extreme and outrageous," or "beyond all bounds of decency" and "utterly intolerable in a civilized community." While plaintiffs conclude that the actions "attributable to all defendants jointly and severally were outrageous and beyond the scope of human decency" (Complaint, ¶ 42), such conclusions are unsupported by any facts. Where such facts are missing, Massachusetts courts faced with Rule 12(b)(6) motions have not hesitated to dismiss claims for intentional infliction of emotional distress. See, *e.g.*, <u>Polay</u>, 468 Mass. at 386 (granting motion to dismiss claim of intentional infliction of emotional distress where defendant neighbor allegedly filed false police reports of stalking and assault and battery against plaintiffs, filed harassment prevention petitions against plaintiffs based upon such false reports, verbally attacked plaintiffs, and monitored and recorded plaintiffs' home "on a continuous basis," on grounds that plaintiffs "have not alleged sufficiently extreme and outrageous conduct"); <u>Beecy v. Pucciarelli</u>, 387 Mass. 589, 596 (1982) (granting motion to dismiss claim of intentional infliction of emotional distress based on defendant's initiation of collection action against plaintiffs). Count IV should be dismissed as against the individual defendants.

**K.**      **The Municipal Defendants are Immune from Suit and Liability for Intentional Torts Under M.G.L. c. 258, § 10(c) and, Therefore, Count IV Should be Dismissed as Against Them.**

Count IV should also be dismissed as against the municipal defendants, the Town of Walpole and the individual defendants sued in their official capacity. Under the Massachusetts Tort Claims Act, public employers are immune for all intentional torts, including intentional infliction of emotional distress. M.G.L. c. 258, § 10(c); Morgan v. Driscoll, 2002 WL 15695, *6 (D. Mass. Jan. 3, 2002); Canales v. Gatzunis, 979 F. Supp. 2d 164, 175-76 (D. Mass. 2013).

## IV. CONCLUSION

For the reasons set forth above, plaintiffs' Complaint fails to state claims against the defendants, the Town of Walpole; the WPD; Police Chief John J. Carmichael, Jr.; Police Officer Andrew Kiewlicz; Detective Michael Benner; Detective Sgt. Richard Kelleher; SRO Thomas Hart; Detective Kyle Griffin; Police Officer Matthew Crown; the Walpole School Department; and WHS Vice Principal Lee Tobey; upon which relief can be granted. Therefore, the defendants request that this Court allow their Motion for Judgment on the Pleadings Under Rule 12(c) and, thereafter, enter judgment in favor of all defendants on all Counts of plaintiffs' Complaint. Specifically, the defendants request that this Court dismiss the following:

- All claims asserted by the plaintiff, Heather Sullivan;

- All claims asserted against the defendants, the Walpole Police Department and the Walpole School Department;

- All claims asserted against the seven individual Walpole defendants (Chief Carmichael; Officer Kiewlicz; Detective Benner; Detective Sgt. Kelleher; SRO Hart; Detective Griffin; Officer Crown; and Vice Principal Tobey) in their individual capacity;

- Alternatively, all state law claims (Counts III & IV) asserted against the individual defendant, Vice Principal Tobey;

- All claims asserted for the alleged violation of plaintiffs' due process rights in Count I;

- All claims asserted by the minor plaintiffs for the alleged violation of their Fourth Amendment rights in Count I;

- All claims for municipal liability asserted in Count I;

- All claims for an alleged civil rights conspiracy asserted in Count II;

- All claims under the Massachusetts Civil Rights Act asserted in Count III; and

- All claims for intentional infliction of emotional distress asserted in Count IV.

To be clear, if this Court grants defendants' Motion for Judgment on the Pleadings Under Rule 12(c) in its entirety, it should thereafter enter judgment in favor of *all* defendants on *all* Counts of plaintiffs' Complaint.

Respectfully submitted,

The Defendants,
TOWN OF WALPOLE, MA, WALPOLE POLICE DEPARTMENT, CHIEF JOHN F. CARMICHAEL, JR., OFFICER ANDREW KIEWLICZ, DET. MICHAEL BENNER, DET. SGT. RICHARD KELLEHER, OFFICER THOMAS HART, DET. KYLE GRIFFIN, OFFICER MATTHEW CROWN, WALPOLE SCHOOL DEPARTMENT, and VICE PRINCIPAL LEE TOBEY,

By their Attorneys,

**PIERCE DAVIS & PERRITANO LLP**

*/s/ John J. Davis*
_____
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com

Dated: June 8, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on June 8, 2020.

*/s/ John J. Davis*

_____

John J. Davis, Esq.