UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 1:20-CV-10484-GAO

EDWARD SULLIVAN, HEATHER SULLIVAN, )
SS, TS, CS, and BS,1 )
    Plaintiffs, )
 )
 )
v. )
 )
 )
TOWN OF WALPOLE, MA, WALPOLE POLICE )
DEPARTMENT, CHIEF JOHN F. CARMICHAEL, JR., )
OFFICER ANDREW KIEWLICZ, DET. MICHAEL )
BENNER, DET. SGT. RICHARD KELLEHER, )
OFFICER THOMAS HART, DET. KYLE GRIFFIN, )
OFFICER MATTHEW CROWN, AND OTHER NAMES )
UNKNOWN TO THE PLAINTIFFS AT THIS TIME, )
WALPOLE SCHOOL DEPARTMENT, VICE )
PRINCIPAL LEE TOBEY, AND OTHERS AS YET )
UNKNOWN TO THE PLAINTIFFS, )
    Defendants. )

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS UNDER RULE 12(c)**

Plaintiffs in the above-captioned case respectfully submit this Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings Under Rule 12(c).

I. **INTRODUCTION**

This is a civil rights action brought by the plaintiffs Edward Sullivan, Heather Sullivan, individually, and as legal guardians on behalf of their children SS, CS, TS, and BS. On October 25, 2018, Edward Sullivan was wrongfully arrested by officers of the Walpole Police Department with no evidence that he had committed a crime, was committing a crime or was about to commit a crime. Along with his arrest, his children: SS (age 15), CS (age 8) and BS

---

1 In their Motion for Judgment, Defendants changed the caption to remove the names of the minor Plaintiff children. Plaintiffs have changed the caption to make it easier to refer to the individual children. Plaintiffs have also added the names of Officer John Thayer and Det. Ian Tolland and removed the reference to other names unknown.

(age 5) were unlawfully detained at their schools while TS (age 12) was detained at a friend's house. (Compl. ¶¶ 18, 27.)

## II. STANDARD OF REVIEW

When deciding a motion to dismiss, the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and determine whether it is conceivable that plaintiffs have a legitimate claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996). Under *Twombly,* "[f]actual allegations must be enough to raise a right to relief above the speculative level," and state a cause of action with enough weight to "show[] entitlement to relief" and "enough facts to state a claim to relief that is ***plausible*** on its face." 550 U.S. at 555, 570 (emphasis added). Plausibility at the pleading stage is distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted). The complaint should be dismissed only "if the pleading shows no set of facts which could entitle plaintiff to relief." *Zona v. Clark Univ.,* 436 F. Supp. 2d 287, 288 (D. Mass. 2006).

## III. ARGUMENT

### A. Violation of the Plaintiffs' Rights Under 42 U.S.C. § 1983

#### 1. False Arrest of Edward Sullivan

The standard for probable cause to arrest is "whether at that moment [of arrest by officers] the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Bertram v. Viglis,* 2020 WL 1892187, *4 (D. Mass. 2020) quoting *Beck v. State of Ohio,* 379 U.S. 89, 91 (1964); *Roche v. John Hancock Mut.*

2

*Life Ins. Co.*, 81 F.3d 249, 254 (1st. Cir. 1996).

The First Circuit has recognized that "information furnished by a victim is generally considered sufficiently reliable to support a finding of probable cause." *Holder v. Town of Sandown*, 585 F.3d 500, 505 (1st Cir. 2009). Here the alleged victim is Sullivan's daughter, SS. She emphatically furnished the Vice Principal, Officers Benner and Kiewlicz, and DCF representative David Skutul with the same information – her father did not strike her in the face causing the bruising on her cheeks. (Compl. ¶¶ 25-26.) All of these individuals chose not to believe her and instead chose to believe the hearsay story of another student with whom SS is not friendly. (Compl. ¶ 18.) Additionally, the three other Sullivan children told the interrogating officers that their father did not hit them. Based on the information provided by SS and Sullivan's other children, there was no probable cause to arrest Mr. Sullivan.[2]

2. **Detainment of the Four Sullivan Children**

The unreasonable detainment of the four Sullivan children violated their rights to be free from seizures under 42 U.S.C. § 1983. They were seized by a frightening display of police authority in the persons of Defendants Kiewlicz and Benner. They were detained in three different locations for hours. They were interrogated by DCF without understanding why. They were kept from their parents for hours and were frightened for themselves and their parents. The experience has traumatized the children and completely disrupted their lives.

Defendants Kiewlicz and Benner responded to Walpole High School following a report made to Defendant Kelleher. (Compl. ¶ 25.) Defendant Tobey told Kiewlicz and Benner the hearsay story she had heard from 15-year-old student, KC. Tobey then told them SS's story that

---

[2] It is also well known that the Walpole Police Department has a long history of aggressive policing and other issues. Some of these issues include: rushing to judgment and prematurely arresting individuals, *see Edmund Burke v. Town of Walpole*, 405 F.3d 66 (1st Cir. 2005), officers stealing from the police evidence locker and a local supermarket, racially profiling an innocent black man in 2016, and committing indecent assault and battery (Deputy Police Chief Christopher Mackenzie) in 2020. The arrest of Mr. Sullivan without probable cause is just another example of the issues facing the Walpole Police.

3

her 7-year-old brother, with whom she shares a room, fell out of bed and hit her in the face. (Compl. ¶ 22.). For some unknown reason, these Defendants chose to believe the hearsay story rather than the truth from the victim. SS was then questioned extensively and repeatedly by DCF officer David Skutul, Kiewlicz and Benner. (Compl. ¶ 26.) During this interrogation, SS adamantly denied ever being assaulted by her father. *Id.* This led to the violation of the children's right to be free from unnecessary seizures under 42 U.S.C. § 1983.

Defendants argue that the "express purpose of the DCF investigation was to protect the health and safety of the children by ensuring they were not returned to an abusive environment." (Defts. Memo p. 10.) They also state that when an "emergency response" is begun, the initial priority of the DCF "is to view the child(ren) in question and to determine the condition of any other children residing in the same household." (Id. fn. 3.) In their overzealousness, Defendants Tobey, Kiewlicz and Benner failed to note that there was no emergency or exigent circumstances that required such a strong response. They neglected to consider the harm that such a response would cause to four minor children especially when the viewing of the children by DCF could have occurred in the comfort of their own home pursuant to 110 CMR 4.26(1).

B. **Violation of Mass. Gen. Laws ch. 12, § 11I**

Edward Sullivan's false arrest by Defendants Tolland and Crown violated Mass. Gen. Laws ch. 12, § 11I because there was no probable cause to arrest him. The basis for all claims is the necessity that the arrest be supported by probable cause. *Felix v. Lugas,* 2004 WL 1775994 at *2 n.6 (D. Mass. 2004). [MUCH IS THE SAME AS 1983 CLAIM]

C. **Violation of Family Integrity Rights**

Due Process Clause of 14th Amendment

The defendant's not only separated the Sullivan's minor children from each other and their parents with no justification, they placed one of the minor children, TS who had

4

already left school and gone to the home of a friend at 76 Broad Street in Walpole in the custody of a civilian with no rights, obligations or duty concerning TS. Detective Kyle Griffin went to that address and instructed the homeowner, Brian Greeley, to keep TS at his home until told otherwise by the police. Mr. Greeley complied. The Detective provides no explanation for this egregious dereliction of his duty. He gives no indication that the person he instructed to unlawfully detain TS was known to him or not. This outrageous action by the Detective not only placed a vulnerable minor in potential danger but has also caused the minor child and her entire family immeasurable distress, shame, anxiety and humiliation.

No exigent circumstance existed requiring the detention of the four children at school and a friend's home. No life was endangered and there were no serious injuries suspected or inflicted. The children could have been interviewed at home at any time with at least their mother present rather than in the intimidating present of police officers, DCF and Vice Principals. Edward Sullivan could also have been interviewed at home rather than taken to the police station.

### D. Defendants Carmichael, Kiewlicz, Benner, Kelleher, Hart, Griffin, Crown, Thayer, and Tolland Are Not Protected By Qualified Immunity

Under the First Circuit's analysis, Defendants Carmichael, Kiewlicz, Benner, Hart, Griffin, Crown, Thayer and Tolland, who are sued in their official capacities, are not eligible for qualified immunity. There is a two-step analysis for qualified immunity. The court must decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (2009) (internal quotes omitted). In addition, there are two aspects to the clearly established step of the qualified immunity analysis. Aspect one concentrates on the clarity of the law when the alleged civil rights violation

5

occurred. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The second aspect concentrates more on the case's facts and if a reasonable defendant would know that his actions violated the plaintiff's constitutional rights. "The salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Maldonado*, 568 F.3d at 269.

Defendants Carmichael, Kiewlicz, Benner, Hart, Griffin, Crown, Thayer and Tolland, violated the constitutional rights of plaintiffs by unlawfully detaining the four minor children, the unlawful arrest of Edward Sullivan and by preventing the minor children access to their mother in the absence of any lawful justification all in violation of plaintiffs clearly defined and well settled constitutional rights while acting under color of law. Specifically, the defendants denied all plaintiffs the rights guaranteed them by the United States Constitution, specifically but not limited to, under their Fourth Amendment rights to be free from unlawful restraint of their person and their Fifth and Fourteenth Amendment rights to due process of law.

E.  **Tobey is Not Immune from Liability Based on Her Rush to Judgment**

In order to avoid liability, Tobey's report must have been made in good faith and not be frivolous. Mass. Gen. Laws ch. 119, § 51A(g). However, Tobey's report was not made in good faith. Tobey interviewed SS who denied the accusation made by a fellow student, someone with whom she is not friendly and in whom she would never confide. (Comp., ¶ 19.) There was no history of any abuse problems with SS or her family. Yet, for some reason, Tobey chose to believe the reporting student rather than SS. Pursuant to Mass. Gen. Laws ch. 119, § 51A(a), Tobey had the choice to only notify the Department of Child and Family Services and not the police. She also could have chosen to believe SS and wait to see if there were any future issues. No exigent circumstances existed requiring the detention of SS. SS told her that her bruising

6

was caused by her younger brother falling out of bed and dropping a water bottle on her. (Compl., ¶ 22). Instead she chose to believe hearsay from a 15-year-old reporter with no first-hand knowledge over the explanation provided by the alleged victim.

This situation would be quite different if Tobey had simply reported her suspicions to DCF and left the police out of the equation. Mass. Gen. Laws ch. 119, § 51B requires that an investigation by DCF shall include: (i) a home visit at which the child is viewed, if appropriate; (ii) a determination of the nature, extent and cause or causes of the injuries; (iii) the identity of the person or persons responsible therefore; (iv) the name, age and condition of other children in the same household; (v) an evaluation of the parents and the home environment; and (vi) all other pertinent facts or matters. The mental harm suffered by the Sullivan children and the destruction wrought in their lives by the events of October 25, 2018 is immeasurable.

F. **Intentional Infliction of Emotional Distress**

The Defendants Tolland and Crown should have known that their overly aggressive and unnecessary arrest of Edward Sullivan would cause him and his family emotional distress. Mr. Sullivan is an upstanding citizen of Walpole with no criminal history or prior history of abusing his children. Arresting Mr. Sullivan with no evidence other than a 15-year-old child's hearsay reporting was extreme and outrageous. Mr. Sullivan denied ever abusing his daughter SS or any of his other children. SS denied ever being struck by Mr. Sullivan as did his other children.

The arrest of Mr. Sullivan caused him great emotional distress. It has led to attacks against the family on social media, the loss of his soccer coaching job, and embarrassment in the community. *See I.U. by Roy v. Pioneer Valley Chinese Immigration Charter Schl.*, 2016 WL 8679257, *4 (D. Mass. 2016) (citations omitted). The court should "put as harsh a face on the [defendant's actions] as the basic facts would reasonably allow." *Id.* at *4, quoting *Roman v. Trustees of Tufts College*, 964 N.E.2d 331, 341-42 (Mass. 2012) (alteration in original). The

entire Sullivan family is now in therapy, the children are now in private school and the family is selling their house in Walpole. Edward and Heather Sullivan are in therapy as they are experiencing anxiety and depression as they deal with all of the issues facing their children and family caused by the intentional acts of Tolland, Crown, Kiewlicz, Benner, and Tobey.

The unnecessary detention and interrogation of the children by the Defendants Kiewlicz, Benner and Tobey has also traumatized the children. SS, TS, and CS have all been diagnosed with Post-Traumatic Stress Disorder (PTSD). All four children have a real fear of and animosity towards the police. BS, the youngest, is terrified of police officers. SS has anxiety, depression and an eating disorder causing her to gain weight. TS also suffers from anxiety.

  G. **Claims Against Walpole Police Department and Walpole School Department**

Plaintiffs agree that their claims against the Walpole Police Department and the Walpole School Department should be eliminated.

### IV. CONCLUSION

WHEREFORE, for the reasons stated above, the Plaintiffs respectfully request that Defendants' Motion for Judgment on the Pleadings Under Rule 12(c) be denied.

        Respectfully submitted,
        For the Plaintiffs,

        By their attorneys,

        _____
        Robert M. Griffin, BBO No. 553893
        rgriffin@dharlawllp.com
        Vikas S. Dhar, BBO No. 657539
        vikas@dharlawllp.com
        **DHARLAW** llp
        One Constitution Wharf, Suite 300
        One Constitution Road
        Charlestown, MA 02129

Tel: 617.880.6155
Fax: 617. 880.6160

Dated: March 18, 2021

**Certificate of Service**

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on March 18, 2021.

_____
Robert M. Griffin