UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10484-GAO

EDWARD SULLIVAN, HEATHER SULLIVAN, DOE CHILD 1, DOE CHILD 2, DOE
CHILD 3, and DOE CHILD 4,
Plaintiffs,

v.

TOWN OF WALPOLE, MA; WALPOLE POLICE DEPARTMENT; CHIEF JOHN F.
CARMICHAEL, JR.; OFFICER ANDREW KIEWLICZ; DET. MICHAEL BENNER; DET.
SGT. RICHARD KELLEHER; OFFICER THOMAS HART; DET. KYLE GRIFFIN; OFFICER
MATTHEW CROWN; WALPOLE SCHOOL DEPARTMENT; and VICE PRINCIPAL LEE
TOBEY;
Defendants.

OPINION AND ORDER
March 29, 2023

O'TOOLE, D.J.

The plaintiffs, Edward and Heather Sullivan and their four children, assert claims against

the defendants—former Town of Walpole Police Chief John F. Carmichael, Jr., Officer Andrew

Kiwlicz, Detective Michael Benner, Detective Sergeant Richard Kelleher, Officer Thomas Hart,

Detective Kyle Griffin, Officer Matthew Crown, and Walpole High School Vice Principal Lee

Tobey—for harm the plaintiffs allegedly sustained as a result of an investigation into the

possibility that one of the Sullivan children had been physically assaulted by her father.

The defendants previously moved for judgment on the pleadings (dkt. no. 13), which

motion the Court granted in part and denied in part (dkt. no. 25).[1] After discovery, the defendants

---

[1] That ruling dismissed the plaintiffs' claims for conspiracy (Count II) and for damages under the
Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H & 11I (Count III). The Court
also dismissed the plaintiffs' claims as against the Town of Walpole, Walpole Police Department,
and Walpole School Department, leaving only Counts I and IV as against the eight individual
defendants sued in their individual capacities.

have now moved for summary judgment (dkt. no. 64) on the two remaining counts. For the following reasons, their motion is now GRANTED.

Count I alleges that the defendants are liable under 42 U.S.C. § 1983 for actions or omissions that violated the civil rights of each of the plaintiffs. Specifically, Edward Sullivan alleges that his Fourth Amendment rights were violated because he was arrested without justification. The Sullivan family additionally alleges that their family integrity rights as protected under the Fourth Amendment and due process clause were violated because of the temporary detention of the minor children. For each of the alleged violations, the defendants contend that they have the benefit of qualified immunity.

Government officials performing discretionary functions generally are shielded "from liability for civil damages insofar as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). This means that unless a reasonable person in the position of the individual defendant would have known his behavior was plainly unlawful at the time it occurred, the defendant is immune from liability. Barton v. Clancy, 632 F.3d 9, 26–27 (1st Cir. 2011). The protection is more than a defense to liability; it is an immunity from suit. Saucier v. Katz, 533 U.S. 194, 200–01 (2001).

The First Circuit employs a two-part analysis to decide whether qualified immunity exists in a specific factual context: (1) whether the plaintiffs' allegations, if true, are sufficient on their face to establish a violation of one or more constitutional rights of the plaintiffs; and (2) whether an alleged right was "clearly established" at the time of the claimed violation. Air Sunshine, Inc. v. Carl, 663 F.3d 27, 32–33 (1st Cir. 2011) (citing Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009)). The second question provides "breathing room" to defendants by affording them

immunity from liability if they had made "reasonable mistakes about the lawfulness of their conduct." <u>Est. of Rahim, by Rahim v. Doe</u>, 51 F.4th 402, 410 (1st Cir. 2022).

The parties do not dispute whether the plaintiffs' allegations, if true, could establish a constitutional violation. They do dispute whether the claimed right alleged was "clearly established" at the time of the relevant events so that the defendants should have known that their acts or omissions worked a violation of the identified right.

With respect to the arrest of Edward Sullivan, Detective Toland had probable cause to arrest him based on the collective knowledge of the Walpole Police Department, including visible evidence of bruising on his daughter SS's cheeks, KC's report to school authorities that SS had told her that Edward Sullivan had inflicted the bruising, and the failure of the younger brother, CS, to corroborate SS's claim that the cause of the bruising was an accident that occurred in the bedroom CS and SS shared. (Defs.' Concise Statement of Material Facts Pursuant to Local Rule 56.1 ¶¶ 7, 29, 38–39 (dkt. no. 66).) On this record, the facts conveyed to Detective Tolland did not establish that probable cause to arrest Edward Sullivan did *not* exist at the time of the arrest. <u>See Cox v. Hainey</u>, 391 F.3d 25, 31 (1st Cir. 2004) ("[I]n the case of a warrantless arrest, if the presence of probable cause is arguable or subject to a legitimate question, qualified immunity will attach."). Thus, the defendants have qualified immunity with respect to the arrest of Edward Sullivan.

With respect to the temporary detention of the minor children, it also was not "clearly established" that such detention was unlawful under the Fourth Amendment and/or the due process clause. Massachusetts General Laws Chapter 119, Section 51A requires mandatory reporters to investigate thoroughly when there is "reasonable cause to believe that a child is suffering physical or emotional injury." After KC's report to school authorities that SS had told her that Edward Sullivan had inflicted the bruising on SS's cheeks, Walpole school officials, in line with their

statutorily imposed public duty, acted to ensure the safety of the children based on information about potential abuse. See Mass. Gen. Laws ch. 119, § 51A; see also Frazier v. Bailey, 957 F.2d 920, 930 (1st Cir. 1992) ("[T]he government itself has a compelling interest in the health, education, and welfare of children as future citizens."). This information prompted Walpole school officials to contact the Department of Children and Families ("DCF") to support the ongoing investigation. DCF is authorized by law to take a child into immediate temporary custody to protect the child from potential abuse. In the circumstances disclosed in discovery, the defendants could not have known that their actions in support of DCF's investigation were plainly unlawful. See Lucia v. City of Peabody, 971 F. Supp. 2d 153, 165 (D. Mass. 2013) (ruling, in the protective custody context, that a reasonable officer could have concluded that he did not violate the Constitution by detaining an individual for less than twelve hours when a suitable treatment facility had not been located); Garfield v. McLaughlin, No. 09-11617-GAO, 2012 WL 474126, at *3–4 (D. Mass. Feb. 13, 2012) (holding DCF employees entitled to qualified immunity). The defendants, therefore, have qualified immunity with respect to the plaintiffs' Fourth Amendment and substantive due process claims.

Count IV, which asserts intentional infliction of emotional distress, fails to state a claim against any of the defendants. For a party to be liable for intentional infliction of emotional distress, that party's behavior must be "extreme and outrageous," meaning it must be "utterly intolerable in a civilized community." Agis v. Howard Johnson Co., 355 N.E.2d 315, 319 (Mass. 1976). "The standard for making a claim of intentional infliction of emotional distress is very high." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996). Having found that the defendants are entitled to qualified immunity, at least in the circumstances of this case, there can be no claim that their conduct was "extreme and outrageous" or "utterly intolerable in a civilized society." See Garfield,

2012 WL 474126, at *3 ("DCF is authorized to take a child into immediate temporary custody prior to a hearing if it has reasonable cause to believe that the removal of the child is necessary to protect the child from further abuse or neglect."); see also Hatch v. Dep't for Children, Youth & Their Fams., 274 F.3d 12, 22 (1st Cir. 2001); Mass. Gen. Laws ch. 119, § 51B(c).

For these reasons, the defendants' Motion for Summary Judgment (dkt. no. 64) is GRANTED.[2] Judgment shall enter in favor of the defendants as to all remaining claims.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

[2] It is worth noting that if the plaintiffs' claims did survive summary judgment, plaintiff TS's claims would have been dismissed because of her failure to comply with the Court's Order (dkt. no. 52) compelling her to attend deposition. See Fed. R. Civ. P. 41(b) ("If the plaintiff fails to . . . comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against it."); HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 918 (1st Cir. 1988) ("[T]he law is well established in this circuit that where a noncompliant litigant has manifested a disregard for orders of the court and been suitably forewarned of the consequences of continued intransigence, a trial judge need not first exhaust milder sanctions before resorting to dismissal.").